[L. A. No. 23536.   In Bank.   May 10, 1955.]

I.E.S. CORPORATION (a Corporation) et al., Petitioners,
v. SUPERIOR COURT OF LOS ANGELES COUNTY
et al., Respondents; MAX GOLD et al., Real Parties in
Interest.

Combs & Hoose, Lee Combs and Harned Pettus Hoose for Petitioners.

Harold W. Kennedy, County Counsel, and Wm. E. Lameroux, Deputy County Counsel, for Respondents.

Leo K. Gold for Real Parties in Interest.

TRAYNOR, J.—Petitioners, plaintiffs in an action pending in the Superior Court of Los Angeles County, seek a writ of mandate directing respondent court to set aside an order sustaining defendant's refusal to answer certain questions in a pretrial deposition and to enter an order compelling defendant to answer these questions and any other similar questions that may be asked.

The complaint in the pending action alleges that plaintiff* entered into a series of contracts and options for the purchase of war surplus engines, machinery, and equipment from defendant in reliance on defendant's representations that he possessed sufficient funds and organizational capacity to perform, that the engines were new and serviceable, and that he would obtain them for plaintiff at below market rates. It

---

*Plaintiffs are two closely related corporations bearing the same name. In both the pleadings and the briefs they are frequently referred to as one corporation and will be so referred to herein.

is charged that these representations were fraudulent, that plaintiff's former president exceeded his authority in negotiating and signing the contracts on plaintiff's behalf, and that defendant breached the contract by failing to deliver 750 engines. It is also alleged that plaintiff and defendant reduced the contracts and options to a single integrated option, but when plaintiff attempted to acquire certain machinery by exercising a separate and divisible part of the option, defendant refused to perform; that plaintiff issued a notice of rescission as to all contracts and options except those pertaining to certain items of machinery that already had been delivered and accepted; and that although defendant continues to demand payments, plaintiff owes nothing to defendant but is itself entitled to damages because the accepted goods were inferior in quality and higher in price than represented.

The complaint also contains extensive allegations concerning a conspiracy by defendant, various sellers of war surplus engines, and plaintiff's former president. It is alleged that "the defendants and each and every one of them did conspire and agree that they would purchase and give option for and purport to sell to the plaintiff certain war surplus and other machinery and equipment at extremely high and unfair prices; that defendants and each of them did further conspire to defraud the plantiffs by misrepresenting to the plaintiffs the true condition of said machinery and equipment, by obtaining secret rebates and secret profits by reason of the plaintiffs' purchase of said machinery and equipment, by the delivery to the plaintiffs by the defendants and each of them of machinery and equipment of an inferior type which was represented to the plaintiffs as unused machinery or machinery and in good condition (sic), and by doing and conspiring to do each and every one of said acts." The complaint charges that pursuant to the conspiracy, defendant and plaintiff's former president made an extensive buying trip together during which they got in touch with sellers of war surplus machinery and conspired with them to "lure the plaintiffs into numerous purchases of non-existent machinery, inferior machinery, highly overpriced machinery, machinery as to which the defendants and each of them had no right to grant options or to sell, . . . and to extract huge secret profits and rebates from plaintiffs and to sell to plaintiffs inferior and unmerchandiseable machinery at a vast profit." Numerous fictitious persons are joined as defendants, and it is alleged that they are the unknown conspirators who will be served

with summons as soon as their identities are divulged. The complaint requests declaratory relief as to the contracts and options between plaintiff and defendant, restitution of deposits paid to defendant, recovery of damages caused by defendant's misrepresentations, and the recovery of secret profits and rebates from defendant and his coconspirators.

In giving his deposition, defendant answered questions concerning his negotiations with plaintiff's former president, the execution of the integrated option, his delivery of goods to plaintiff and plaintiff's subsequent refusal to pay him or to accept further deliveries. He admitted making the buying trip with plaintiff's former president and said that he had offered to sell him engines that they had inspected together. He refused, however, to reveal from whom, in what manner, and at what prices he had acquired his engines. He was asked about the nature of his business with Green Bros. Trucking Sales Company of Chicago, Illinois, whether he had purchased 650 to 750 engines from them, and whether he had resold these engines to plaintiff, but he refused to answer. Nor would he reveal the identities of any sellers of war surplus machinery with whom he dealt during the buying trip or the nature of his transactions with them, or answer the questions: "Who in it [the surplus business] do you know?" "What other companies besides Green Brothers did you interview in Chicago?" "Prior to this information that someone else had bought stock in the I.E.S., you had a conversation with Tom Benevides about buying into the company yourself, didn't you?" "By the way, did your lawyer tell you before this hearing, or prior to today, not to name the yards or the people on your trip?" He also refused to answer questions concerning his knowledge of engines and their prices. Asserting that the questions were irrelevant and immaterial, that no foundation for them had been laid, that communications by his counsel were privileged, and that he was not required to reveal the sources of the goods that he sold, defendant refused to answer fifty-five questions. Of these, the superior court ordered him to answer only three.

In the interest of full disclosure, the witness in a deposition taken pursuant to section 2021, subdivision 1, of the Code of Civil Procedure must answer all questions seeking nonprivileged information that is material to the subject matter of the pending action (*McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386, 395 [159 P.2d 944]; *San Francisco Gas & Elec. Co.* v. *Superior Court*, 155 Cal. 30, 34

[99 P. 359, 17 Ann.Cas. 933]; *Verdier* v. *Superior Court,* 88 Cal.App.2d 527, 531 [199 P.2d 325]; *Rossbach* v. *Superior Court,* 43 Cal.App. 729, 731 [185 P. 879]; see *Holm* v. *Superior Court,* 42 Cal.2d 500, 505 [267 P.2d 1025, 268 P.2d 722]; *Ahern* v. *Superior Court,* 112 Cal.App.2d 27, 31 [245 P.2d 568]; *Carnation Co.* v. *Superior Court,* 96 Cal.App.2d 138, 140 [214 P.2d 552]), and he cannot block the interrogation by contending that it is a "fishing expedition" or by urging the secrecy of his methods of doing business.* ▇ At the same time, the taking of a deposition must not be abused (*Crocker* v. *Conrey,* 140 Cal. 213, 217 [73 P. 1006]), and the witness need not answer questions that serve no proper purpose or are irrelevant. (Code Civ. Proc., §§ 2065, 2066; *McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386, 395; see *Dastagir* v. *Dastagir,* 109 Cal.App.2d 809, 816-820 [241 P.2d 656], and cases and authorities there cited.)

▇ In the present case, most of the unanswered questions seek to determine the identities of persons who sold goods to defendant or from whom he intended to buy and defendant's knowledge of engines and their market values. Defendant's knowledge is relevant to the question whether his representations were made without belief, or in the absence of reasonable grounds for belief, in their truth. (Civ. Code § 1710, subds. 1, 2.) Similarly, plaintiff was entitled to learn the sources of the goods to determine whether they were sold to defendant in the condition and at the prices represented and whether the sellers had conspired with defendant to defraud plaintiff. Moreover, the identity of persons from whom defendant intended to buy is relevant, for if defendant's answers indicated that he had no anticipated source of supply, that fact would tend to prove that he made promises to plaintiff without the intention of performing them. (Civ. Code, § 1710, subd. 4.) Forty-eight of the questions involved seek information of the foregoing kind and therefore must be answered.†

Four questions, however, are not within the scope of proper interrogation. ▇ On the ground that it was a privileged

---

*Methods of doing business, other than secret processes, developments, or research, have not been protected from inquiry in deposition proceedings under the Federal Rules of Civil Procedure. (*Moss* v. *Aetna Standard Engineering Co.,* 11 Fed. Rules Serv. 594; see 59 Yale L.J. 117, 42 Cal.L.Rev. 829.)

†As numbered in Exhibit B of plaintiff's petition, the questions that must be answered are 1-5, 7-10, 12-19, 21-48, and 50-55.

communication, defendant refused to answer the question, "By the way, did your lawyer tell you before this hearing, or prior to today, not to name the yards or the people on your trip?" Code of Civil Procedure, section 1881, subdivision 2, provides that "An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment," and it is settled that the privilege cannot be defeated by attempting to elicit the privileged communications from the client instead of the attorney. (*City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227, 236 [231 P.2d 26, 25 A.L.R.2d 1418], and cases cited.)

On the grounds that they were irrelevant and immaterial, defendant refused to answer the following questions: "Prior to this information that someone else had bought stock in the I.E.S., you had a conversation with Tom Benavides about buying into the company yourself, didn't you?" "What other companies besides Green Brothers did you interview in Chicago?" "Who in it [the surplus business] do you know?" ██ Whether or not defendant had a conversation about buying stock in plaintiff has no bearing on the invalidity of the contracts, breaches of contract, misrepresentations, or conspiracies alleged in the complaint. The questions seeking the identities of everyone defendant knew in the surplus business and everyone he interviewed in Chicago were too broad. It is not improbable that defendant knew and interviewed people who had no connection with his transactions with plaintiff, and the identity of such persons would be irrelevant. In this respect plaintiff may secure all the information to which it is entitled by limiting its inquiry to the identity of persons who were connected with the transactions that are the subject matter of the action.

██ Since an appeal from the final judgment would not afford an adequate remedy for correcting the order of respondent court sustaining defendant's refusal to answer, mandamus is the proper remedy. (*McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386, 392.) Let a writ of mandate issue directing respondent to set aside its order and to make the necessary orders to enable completion of the deposition in accord with the views expressed herein.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.