[Civ. No. 23680. First Dist., Div. One. Oct. 6, 1966.]

THE MORRIS STULSAFT FOUNDATION et al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; LILLIAN K. STULSAFT et al., Real Parties in Interest.

410

Cooley, Crowley, Gaither, Godward, Castro & Huddleson and Harley J. Spitler for Petitioners.

Thomas C. Lynch, Attorney General, and Eric Collins, Deputy Attorney General, as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Vincent Hallinan for Real Parties in Interest.

SULLIVAN, P. J.—Petitioners seek a writ of mandate commanding respondent court to vacate its order denying their motion to compel a witness to answer questions propounded at a deposition upon oral examination and further commanding respondent to enter an order compelling the witness to answer.[1]

Petitioners are contestants in a will contest pending in the lower court in the Matter of the Estate of Morris Stulsaft, who died in San Francisco on October 23, 1965. Decedent had been hospitalized during the preceding summer and on July 27, 1965, had married real party in interest Lillian Stulsaft in his room at the St. Francis Memorial Hospital. The petition alleges and the return to the alternative writ does not deny that decedent and Lillian never lived together as man and wife and, through their respective counsel, soon began negotiations for a property settlement in anticipation of a divorce.

On October 25, 1965, two days after decedent's death, decedent's witnessed will dated August 3, 1960, together with 10 witnessed codicils thereto, the last codicil dated September 16, 1965, were filed as the purported last will and testament of decedent. Under said will and codicils, according to petitioners' allegations, decedent's estate was disposed of substantially as follows: (1) To real party in interest (Lillian) $50,000 free from any tax; (2) to decedent's relatives and friends various bequests totalling $780,000 and (3) the residue, approximately $7,000,000 in trust to aid and assist needy and deserving children.[2] On November 12, 1965, Lillian

[1]Upon the filing of the petition for writ of mandate, we granted the request of the Attorney General for permission to file a brief as amicus curiae in support of petitioners, said request alleging that the Attorney General is the representative of the public interest and acting for the State as *parens patriae* and that he is charged with the duty of protecting bequests for charitable purposes.

[2]A copy of the August 3, 1960 will lodged with us shows that the residue is devised and bequeathed to The Morris Stulsaft Foundation, a petitioner herein.

filed a contest to the August 1960 will as republished by the 10th codicil dated September 1965.

On February 14, 1966, almost four months after decedent's death, Lillian filed for probate a document dated October 4, 1965, which was alleged to be the last will of decedent. This document, typed on the stationery of the Land Development & Investment Co. of San Francisco reads as follows:

"LAST WILL OF MORRIS STULSAFT.

This is my Last Will:

I leave everything I have to my wife, Lillian, and I appoint her Executor of this Will without bond.

Dated: October 4, 1965."

The above is followed by the name "Morris Stulsaft" in script, the word "witnesses:" (*sic*) (with the "w" handwritten in) which is in turn followed by the names and addresses of "Elmer J. Griffin" and "Milton C. Griffin" in script. Petitioners[3] filed a contest to the probate of said document.[4]

Petitioners' contest to the proposed will dated October 1965 contains seven counts asserting in substance the following grounds: (1) lack of due execution and attestation; (2) Lillian's forfeiture of any interest in the estate in excess of $1 as a result of her offering the October 1965 document for probate in the face of a no-contest clause in the August 1960 will; (3) decedent's lack of mental capacity; (4) that decedent signed the document as the result of undue influence exercised upon him by Lillian and three other persons;[5] (5) that decedent signed the document as the result of fraudulent representations made to him by Lillian and said three persons; (6) that decedent signed the document as the result of certain acts of Lillian carried out pursuant to a conspiracy entered into by her with said three persons to defraud decedent and the beneficiaries of his previous will; and (7) "That if Testator signed said paper, said Testator did not intend to

---

[3]Petitioners herein are The Morris Stulsaft Foundation and L. Robert Van Geffen, the latter having been appointed special administrator of decedent's estate.

[4]The parties before us have referred to the contest filed by Lillian to the August 1960 will and September 1965 codicil as "the first will contest" and to the contest filed by petitioners to the October 1965 document as "the second will contest." As the occasion requires we will do likewise.

[5]Said other persons are designated by the fictitious names First Doe, Second Doe and Third Doe.

revoke said will dated August 8, 1960, or said codicils thereto.'' Lillian filed an answer to the contest denying all of its allegations.

Thereafter petitioners (contestants) served and filed a notice for the taking of the deposition upon oral examination of Elmer J. Griffin, who was one of the subscribing witnesses to the will of October 1965 filed by Lillian and who also claimed to be its scrivener.[6] At the deposition, Vincent Hallinan, Esq. appeared as counsel for Lillian; Griffin, the deponent, was not represented. Mr. Hallinan interposed objections to certain questions and suggested to Griffin that he not answer certain questions but that he walk out of the deposition. He objected to certain questions as being incompetent, irrelevant and immaterial. Griffin then stated that the questions were embarrassing to him, refused to answer them, and announced that he was going to follow Mr. Hallinan's suggestion and leave. He was instructed by the notary to answer the questions and to remain at the proceeding. He refused to follow the notary's instructions and left the deposition.

Petitioners then filed a motion to compel Griffin to answer. It was denied. This petition for a writ of mandate followed.

The present controversy involves two categories of questions: (1) Those relating to Griffin's bankruptcy. After affirmatively answering a question as to whether he had been adjudicated bankrupt, Griffin refused to answer questions as to when, the number of times, where or if he had counsel at the time of bankruptcy. (2) Those relating to previous criminal charges against him. He refused to answer questions as to whether he had been charged with any crime, had been sentenced to prison, had appeared in any court after having been charged with crime, or was currently subject to any court order involving a criminal prosecution.[7]

---

[6]In their memorandum filed with us, petitioners state that said deponent ''is believed to be'' First Doe.

[7]In their memorandum of points and authorities filed in this court, petitioners also assert that Griffin refused to testify as to his business addresses in San Francisco. Neither pertinent portions of Griffin's deposition quoted in the petition filed herein nor the exhibits lodged with us, disclose any interrogation of the witness on this subject. Indeed, an examination of petitioners' motion to compel answers filed below contains no reference to questions in this area or to the witness' refusal to answer them. The questions involved in the motion below and those included in the instant petition are identical and fall into the two categories mentioned above. Petitioners, now claiming that the trial court abused its discretion in refusing to compel such answers, cannot expand the instant proceeding to include areas of refusal not brought to the attention of the trial court. We therefore decline to pass upon them here.

The parties before us do not question, nor could they, the availability of the remedy invoked in these proceedings. ██ It is settled that the writ of mandate is a proper remedy for reviewing discovery procedures and that the writ may issue not only to enforce a proper discovery right but to prevent improper discovery. (*Carlson* v. *Superior Court* (1961) 56 Cal.2d 431, 435-436 [15 Cal.Rptr. 132, 364 P.2d 308]; *Flora Crane Service, Inc.* v. *Superior Court* (1965) 234 Cal.App.2d 767, 775-776 [45 Cal.Rptr. 79] and cases there cited.) ██ Nor can there be any question that the discovery procedures found in the Code of Civil Procedure are available for use in probate proceedings (*Coberly* v. *Superior Court* (1965) 231 Cal.App.2d 685, 690-691 [42 Cal.Rptr. 64]; see also *Adams* v. *Superior Court* (1957) 49 Cal.2d 427 [317 P.2d 983]) and that in the instant case ''Any party may take the testimony of any person . . . by deposition . . . for the purpose of discovery or for use as evidence . . . or for both purposes.'' (Code Civ. Proc., § 2016, subd. (a).)[8]

Basically, the determination of the present controversy rests upon an application of section 2016, subdivision (b) which in pertinent part provides: ''Unless otherwise ordered by the court as provided by subdivision (b) or (d) of Section 2019 of this code, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.''

██ Where no claim of privilege is addressed to the testimony sought to be elicited from the deponent, the sole function for the appellate court in determining the propriety of the trial court's order inhibiting or compelling testimony is to ascertain whether the latter court abused its discretion. ██ In its traditional role of controlling and correcting an abuse of judicial discretion (*Inglin* v. *Hoppin* (1909) 156 Cal. 483, 488 [105 P. 582]; *Hilmer* v. *Superior Court* (1934) 220 Cal. 71, 73 [29 P.2d 175]; *Hays* v. *Superior Court* (1940) 16 Cal.2d 260, 266 [105 P.2d 975]; *California Pine Box etc. Co.* v. *Superior Court* (1910) 13 Cal.App. 65, 70-71 [108 P. 882]), the writ of mandate is, as we have said, a proper remedy where the trial court has abused its discretion in restraining

---

[8]Hereafter, unless otherwise stated, all section references are to the Code of Civil Procedure.

discovery sought by deposition. (*Carlson* v. *Superior Court, supra*; *I.E.S. Corp.* v. *Superior Court* (1955) 44 Cal.2d 559, 564 [283 P.2d 700] ; *McClatchy Newspapers* v. *Superior Court* (1945) 26 Cal.2d 386, 392 [159 P.2d 944] ; *Regents of University of California* v. *Superior Court* (1962) 200 Cal.App.2d 787, 789 [19 Cal.Rptr. 568] ; *Tatkin* v. *Superior Court* (1958) 160 Cal.App.2d 745, 750 [326 P.2d 201] ; see also *Hauk* v. *Superior Court* (1964) 61 Cal.2d 295, 296 [38 Cal.Rptr. 345, 391 P.2d 825] ; *Waters* v. *Superior Court* (1962) 58 Cal.2d 885, 890 [27 Cal.Rptr. 153, 377 P.2d 265] ; *Pember* v. *Superior Court* (1966) 240 Cal.App.2d 888 [50 Cal.Rptr. 24] ; *Kramer* v. *Superior Court* (1965) 237 Cal.App.2d 753 [47 Cal. Rptr. 317].)

■ While the discovery statutes vest a wide discretion in the trial court in granting or denying discovery, the "appellate courts in passing on orders granting or denying discovery should not use the trial court's discretion argument to defeat the liberal policies of the statute." (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 378-379 [15 Cal.Rptr. 90, 364 P.2d 266] ; *City of Los Angeles* v. *Superior Court* (1961) 196 Cal.App.2d 743, 748 [16 Cal.Rptr. 851].) ■ As was said in *DeMayo* v. *Superior Court* (1961) 189 Cal. App.2d 392, 394 [11 Cal.Rptr. 157], cited with approval in *Greyhound*: "While as a general rule the trial court has a broad discretion in permitting or denying discovery where discovery is sought as to a nonprivileged matter which is directly relevant to the issues before the court, there is no room for the exercise of discretion, for the party seeking to discover is entitled to it as a matter of right."

Section 2016, subdivision (b) expressly requires that the information sought by deposition must be relevant to the subject matter involved in the action. ■ As we pointed out in *Regents of University of California* v. *Superior Court, supra,* 200 Cal.App.2d 787, 794, quoting from *Moody* v. *Peirano* (1906) 4 Cal.App. 411, 418 [88 P. 380] : " 'No precise or universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience.' . . ." The test of relevancy to the subject matter is "a broader concept than relevancy to the issues." (*Pettie* v. *Superior Court* (1960) 178 Cal.App.2d 680, 687 [3 Cal.Rptr. 261] ; *Chronicle Publishing Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 560 [7 Cal. Rptr. 109, 354 P.2d 637] ; *Flora Crane Service, Inc.* v. *Superior Court, supra,* 234 Cal.App.2d 767, 787.)

In determining whether questions asked at a deposition pertain to matters "relevant to the subject matter involved in the pending action" (§ 2016, subd. (b)) we heed the caveat that the discovery statutes "must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial." (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 377; *Regents of University of California* v. *Superior Court, supra,* 200 Cal.App.2d 787, 789-790.) As the statute makes clear, it is not a ground for objection that the information sought to be elicited is not admissible at trial if it "appears reasonably calculated to lead to the discovery of admissible evidence." (§ 2016, subd. (b); *Chronicle Publishing Co.* v. *Superior Court, supra,* 54 Cal.2d 548, 559-560; *Regents of University of California* v. *Superior Court, supra.*)

We must determine whether in the light of these principles the trial court abused its discretion in refusing to compel answers to the deposition questions. Our inquiry must therefore be directed to the relevant facts brought to the attention of the trial court and upon which it made its decision. These have been brought before us by the instant petition which has set forth the questions and incorporated by reference pertinent documents in the county clerk's file, copies thereof being furnished us. The answer to the petition and the return filed by the real party in interest, while misconceived in function and with definite shortcomings as to both form and substance,[9] in general tenor indicate a position that the deposition questions were improper and that the court did not abuse its discretion in refusing to compel answers to them.

[9]Upon the filing of the petition and *before* issuance of the alternative writ, real party instead of filing merely points and authorities in opposition (see Cal. Rules of Court, rule 56(b)) filed an unverified "Answer . . . to Petition for Writ of Mandate" signed by her counsel. After issuance of the alternative writ she filed a return, which, not appearing to be a demurrer, we must assume to be by answer. (Cal. Rules of Court, rule 56(c).) This return, *not verified* as required by rule 56(c), consists of a long narrative statement by Lillian, neither adhering to the format nor performing the function of an answer directly responsive to the allegations of the petition. Attached to the return are declarations under penalty of perjury (§ 2015.5) of Elmer J. Griffin and Milton Griffin, the subscribing witnesses to the will with various documents attached in turn to each. Petitioners apparently out of an abundance of caution have met the return with a traverse of 28 pages, also incorporating two extensive declarations. The return and the traverse thus present a disputatious dialogue relating to the background of the case. We decline to listen. As pointed out above, these statements and declarations were not before the trial court.

However both the return and petitioners' traverse to the return incorporate declarations not before the trial court. We decline to consider these. (See *Gutierrez* v. *Superior Court* (1966) 243 Cal.App.2d 710, 729-730 [52 Cal.Rptr. 592].) The instant controversy can be determined on the pleadings before us.

 ██ Preliminarily we observe that in resolving it we must consider, among other things, three circumstances affecting the deponent which were before the trial court: first, that he was a subscribing witness to the will; second, that he claimed to be its scrivener; and third, that petitioners claimed that he, together with Lillian, was a member of a conspiracy to defraud decedent and the beneficiaries of decedent's prior will. We turn to the questions.

### 1. *Questions relating to Griffin's bankruptcy.*

After Griffin responded that he had been previously adjudicated a bankrupt, counsel for Lillian, the proponent of the October 1965 will and under its terms the sole beneficiary of decedent's $7,000,000 estate, intervened to advise the deponent whom he did *not* represent that the latter did not have to answer unless he wanted to. Thereafter, upon a series of questions, to which Lillian's counsel interposed "suggestions" and "objections," the deponent refused to answer as to when, where, and how often he had been adjudicated a bankrupt and whether he was represented by counsel at the time.[10] As a result the entire line of inquiry was cut off.

[10] The following questions were asked: "Q. [By Mr. Castro, Attorney for Contestants] Have you ever been adjudicated a bankrupt? A. [Mr. Griffin] Yes, sir. Mr. HALLINAN [Attorney for Lillian K. Stulsaft, Proponent]: Mr. Griffin, you don't have to answer that unless you want to. You have answered it, all right, but they haven't any right to inquire into those things. Mr. CASTRO: And that was approximately when? Mr. HALLINAN: I will suggest to Mr. Griffin that you don't have to answer. I will object to it as incompetent, irrelevant and immaterial. THE WITNESS: I will follow that suggestion. Mr. CASTRO: Were you adjudicated a bankrupt on more than one occasion? Mr. HALLINAN: The same objection. THE WITNESS: I refuse to answer. Mr. CASTRO: Q. Did you file for bankruptcy on more than one occasion? Mr. HALLINAN: Same objection. THE WITNESS: I refuse to answer that question. Mr. CASTRO: Q. Would you tell us where you were adjudicated a bankrupt? Mr. HALLINAN: Same objection. THE WITNESS: I refuse to answer the question. Mr. CASTRO: Q. Will you state whether you had any attorney representing you at the time of bankruptcy? Mr. HALLINAN: Same objection. THE WITNESS: I refuse to answer. Mr. CASTRO: Mr. Ebstein, would you ask— Mr. HALLINAN: I will stipulate that every question you put to him, the Notary has directed him to answer and that he still refuses to do so. Mr. CASTRO: Well, you stated that you are not his attorney. So that won't bind Mr. Griffin. So I have no choice except to ask

On general principles of relevancy, "the pecuniary circumstances, of one or another person or thing, may tend to show the excitement of a motive in some person." (2 Wigmore on Evidence (3d ed.) § 392, p. 340.) Thus lack of money by a person or his condition of insolvency may be relevant to show the probability that he committed an act in order to obtain money. (*Ibid.*, p. 341.) In some criminal cases, such evidence, though strictly relevant, is ordinarily not admissible in view of the resulting undue prejudice to the defendant, since to permit it would put a poor person at a disadvantage. (*People* v. *Gorgol* (1953) 122 Cal.App.2d 281, 303-304 [265 P.2d 69]; 2 Wigmore, *op. cit.*, pp. 341-342.) In *Gorgol* this court noted several exceptions to the rule of undue prejudice alluded to above. Wigmore puts it thusly: "Nevertheless in cases of merely peculative crime (such as larceny or embezzlement), and in civil cases where the issue is whether the defendant *borrowed money* or not, the fact that he was in need of it at the time is decidedly relevant to show a probable desire to obtain it and therefore a probable borrowing or purloining; and there is here not the same objections from the standpoint of possible Unfair Prejudice: [fn. omitted]." (2 Wigmore, *op. cit.*, p. 342.)

Petitioners also direct our attention to *Boston Ins. Co.* v. *Jensen* (9th Cir., 1958) 259 F.2d 482, a diversity case applying California law in an action to recover for a loss of lumber under a fire insurance policy. There the defendant-insurer asserted that the insured conspired with his son to falsely increase the amount of the lumber burned and offered to prove, as motive for obtaining the insurance money by false pretenses, that the insured was in a bad financial condition. The court of appeals said: "We think the Court erred in refusing to admit such evidence. The California District Court of Appeal has repeatedly held that bad financial condition can be shown as a motive for such conduct. *People* v. *Freeman* (1955) 135 Cal.App.2d 11, 14 [286 P.2d 565]—heavily in debt; *People* v. *Richard* (1951) 101 Cal.App.2d 631, 637 [225 P.2d 938]—business not a paying proposition; *People* v. *Sherman* (1950) 97 Cal.App.2d 245, 249 [217 P.2d 715]—indebted

the Notary Public, and Reporter, Mr. Ebstein, to instruct him to answer the questions and, if he refuses, we will just have to take other procedures. THE NOTARY PUBLIC: Do you wish to have the questions read back, Mr. Griffin? THE WITNESS: No. THE NOTARY PUBLIC: I instruct you to answer the questions you have previously refused to answer. THE WITNESS: I refuse to answer the questions."

for rent." (P. 484.) All of the cited California cases were prosecutions for arson involving insured property in which evidence as to defendant's bad financial condition was considered relevant on the issue of guilt as establishing motive for the crime.

We have no difficulty in distilling from these authorities the principle that evidence of the financial condition of an individual may be relevant to show motive and thus to connect him circumstantially with the act or event in issue. A fortiori such evidence should fall within the broader compass of relevancy to the subject matter of the pending action. If it is petitioners' theory, as it seems to be, that the deponent acting in conspiracy with Lillian not only prepared and wrote out but also witnessed the October 1965 will which gave everything to Lillian, it is certainly pertinent to explore his financial condition in order to ascertain whether he might have had some motive of personal profit for so doing because of his own financial condition. Furthermore, evidence as to the deponent's bankruptcy proceedings, if any, will not only furnish a record of his assets and liabilities at a given time but may disclose transactions had by him with the decedent or Lillian. In this sense, such evidence sought by the questions would appear to be "reasonably calculated to lead to the discovery of admissible evidence." (§ 2016, subd. (b).)

2. *Questions relating to criminal charges against deponent.*

The questioning of the witness in this area began immediately after the questions just considered (see fn. 10, *ante*). After denying at the start that he had ever been convicted of a felony, Griffin refused to answer all subsequent questions, counsel for Lillian interposing similar objections and suggestions to those entered to the bankruptcy questions and finally suggesting to the witness "If I were you, I would walk out. . . ." The questions which the witness refused to answer may be summarized as follows: (a) Had he ever been charged with any crime; (b) Had he ever appeared in any state or federal court in relation to any criminal charge; (c) Had he ever been sentenced to prison; and (d) Was he currently subject to any court order involving any criminal prosecution? We set forth in full below the pertinent part of the deposition proceedings.[11]

---

[11]"MR. CASTRO [Attorney for Contestants]: Q. Now, have you ever been convicted of a felony? A. [Mr. Griffin] No, sir. Q. Have you ever been charged by any crime that— MR. HALLINAN [Attorney for Lillian

█ It is statutory law that a witness may be impeached by proof of conviction of a felony (§ 2051). The same rationale supports question (c) as a proper one since in some jurisdictions (1 Wharton's Criminal Law and Procedure (Anderson (1957)) § 28, pp. 58-59, fn. 12), including California, the nature of the punishment classifies a crime as a felony or not. (Pen. Code, § 17.) It has been held in California in criminal cases that a witness may be questioned with respect to the fact of a judgment and sentence against him for a felony (*People v. Rodrigo* (1886) 69 Cal. 601, 605 [11 P. 481]) and in a proper case whether he served time in a penitentiary under the conviction. (*People v. Cobb* (1955) 45 Cal.2d 158, 162-163 [287 P.2d 752]; *People v. Cordero* (1949) 92 Cal.App.2d 196, 200 [206 P.2d 665].)

█ It is apparent at the outset therefore that the question as to a prior prison sentence is directly relevant. It is also clear that since the witness Griffin entered a blanket denial of

---

K. Stulsaft, Proponent]: Objected to as incompetent and irrelevant and I suggest that he doesn't have to answer it. MR. CASTRO: Q. Do you refuse to answer the question? A. I refuse to answer it. Q. Have you ever been sentenced to prison? MR. HALLINAN: Same objection. I suggest, Mr. Griffin, not to answer that. THE WITNESS: I am following that suggestion and refuse to answer. MR. CASTRO: Q. Have you ever appeared in any court, either in the state court in a federal court, with relation to any crime charged against you? MR. HALLINAN: I am making the same objection and I suggest to you, Mr. Griffin, that it is highly improper. If I were you, Mr. Griffin, about this time I would start walking out. Now, these questions are entirely improper. He has no right to insult you or offend you or ask questions of this kind and he knows it. THE WITNESS: Well, Mr. Castro, while I am being repetitious that Mr. Hallinan is not my attorney, I do resent bringing up things like that and I just refuse to answer them because I certainly don't think it concerns the Stulsaft case. That is why I am supposed to be here. MR. CASTRO: Q. And if Mr. Ebstein instructs you, as he has been doing, to answer these questions that you have refused to answer, would you still refuse to answer them? A. Emphatically not. I refuse to answer them. Q. Now, at the present time, are you subject to any order of any court involving any criminal prosecution? MR. HALLINAN: The same objection and as I suggested to you, Mr. Griffin, I don't think you have to stand around here being insulted by these people. If I were you, I would walk out and let them take the proceedings they want. The next time you come, bring an attorney of your own who can protect you against that kind of thing. So you can suit yourself, but if I were you, I would leave. THE WITNESS: Well, Mr. Castro, I feel this deeply, that I have been embarrassed by bringing up things of this kind because they are irrelevant as regards the Stulsaft case. I have been invited here to testify to give my deposition and these questions, I think, are absolutely embarrassing to me and I refuse to answer them and I am going to follow Mr. Hallinan's suggestion and leave. MR. CASTRO: Would you instruct the witness to remain, Mr. Ebstein? THE NOTARY PUBLIC: You are so instructed, Mr. Griffin, to remain. THE WITNESS: I am certainly not going to follow your instruction. I am leaving. MR. HALLINAN: And I am leaving also.''

a prior conviction of felony at any time, the following questions were reasonably designed to test such denial, the proceedings being for discovery and without the conditions of prejudice which might affect the witness if he were a defendant in a criminal case. Lillian, as proponent of the October 1965 will, was required to produce Griffin and his brother as its subscribing witnesses. (Prob. Code, § 372.) Petitioners correctly argue that on cross-examination at the trial Griffin's credibility will be in issue. It can therefore be concluded in the first place that all of the questions refused to be answered were "reasonably calculated to lead to the discovery of admissible evidence," namely the deponent's prior conviction of a felony and thus to the discovery of material which would be admissible on cross-examination at the trial of the will contest. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 391.)

There is, however, a broader basis on which the questions may be sustained. It will be recalled that the contest charges in essence in three of the counts (counts four, five and six) a conspiracy entered into by Lillian and three other persons to defraud the decedent and the beneficiaries of his prior will. In the proceedings below it was claimed that the deponent was one of the parties to the conspiracy and to the fraud and undue influence constituting its objectives. The record before the trial court reflects a claim by the deponent that he was the scrivener of the will. Nowhere do we find a denial of this fact. It is uncontradicted in the record that the deponent and his brother witnessed the will which the former thus prepared. It also appears without dispute in the record that the will was not produced and filed for probate until February 14, 1966, almost four months after decedent's death on October 23, 1965, and after the filing for probate of his prior will and codicils on October 25, 1965. The drastic and devastating effect of the October 1965 will on the decedent's prior dispositions of his estate has already been noted.

The questions involved seek information as to prior wrongful acts by the deponent. To the extent that they would produce information as to wrongful acts of a nature similar to those encompassed within the above-mentioned grounds of the contest, namely fraud or a conspiracy to defraud, they are clearly relevant. As this court said in *Janisse* v. *Winston Investment Co.* (1957) 154 Cal.App.2d 580, 588 [317 P.2d 48, 67 A.L.R.2d 225]: "It is well settled that evidence of other

transactions to show motive, intent, knowledge, plan, and absence of mistake, in both civil and criminal cases, is admissible. Thus in *Atkins Corp.* v. *Tourny,* 6 Cal.2d 206 [57 P.2d 480], the court held that evidence of other similar frauds committed by defendant at about the same time as the challenged transaction should have been admitted on the issue of intent. [Citations.]'' (In accord: *Wright* v. *Rogers* (1959) 172 Cal.App.2d 349, 363 [342 P.2d 447]; *Messerall* v. *Rubin* (1961) 195 Cal.App.2d 497, 501 [16 Cal.Rptr. 107]; see 2 Wigmore, *op. cit.,* § 371, p. 300.)

The fact that the questions on their face were not restricted to acts *similar* to those involved in the contest is not an impediment to their relevancy since it is obvious that they were preliminary to or introductory of a line of interrogation and therefore designed to establish a broad platform from which more pointed inquiries could be launched. They therefore appear reasonably calculated to lead to the discovery of other allegedly wrongful acts of the deponent bearing upon fraud or a conspiracy to defraud which would be admissible to show his motive, intent or plan in respect to the preparation, witnessing and production of decedent's will. We cannot and need not assess the results of the interrogation. ■ The questions may not elicit information usable at trial. This, however, will not defeat discovery of the information sought since one of the principal purposes of the discovery statutes is to allow a party access to information with which he may effectively prepare for trial. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 376.) We conclude that all of the second group of questions were relevant.

■ Finally, with respect to both categories of questions we observe that this is not a case where the party taking the deposition has had a reasonable opportunity to explore the avenues of interrogation and the court has thereafter issued a protective order limiting the scope and manner of the taking of the deposition. (§ 2019, subd. (d).) The deponent did not seek such a protective order; instead, with the exception of the initial question on each subject, he refused to answer all questions forcing petitioners to file their motion to compel in the court below. Nothing in the ensuing proceedings indicates, nor has it been contended before us, that the trial court in denying petitioners' motion was purporting to exercise its discretion under section 2019, subdivision (d). (See *Kramer* v. *Superior Court, supra,* 237 Cal.App.2d 753, 759.) Contrary to Lillian's

claim, it does not appear that the questions were asked in bad faith or have such an insulting and offensive character as to render them impermissible; nor is there any indication that the trial court so felt. On the contrary, the trial court closed off all further questioning on the pertinent subjects. The effect of its order was to frustrate further discovery in a will contest of magnitude involving serious charges that the testator's real intentions had been fraudulently subverted and to countenance action taken by the deponent upon suggestions of counsel for the proponent and sole beneficiary of the contested will whereby the deponent who prepared, witnessed and tardily produced the document not only resisted the particular interrogation but also walked out of the deposition proceedings.

It is ordered that a peremptory writ of mandate issue requiring respondent superior court to vacate its order denying petitioners' motion to compel the deponent Elmer J. Griffin to answer the aforementioned questions propounded at the taking of his deposition and grant such motion and to order the discovery prayed for therein.

Molinari, J., and Sims, J., concurred.

The petition of real party in interest Stulsaft for a hearing by the Supreme Court was denied November 30, 1966.