Filed 10/10/14  State of California v. Superior Court  CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE STATE OF CALIFORNIA et al., | D065664 |
| Petitioners, | |
| v. | (Imperial County Super. Ct. No. ECU07069) |
| THE SUPERIOR COURT OF IMPERIAL COUNTY, | |
| Respondent; | |
| JERRY RABB et al., | |
| Real Parties in Interest. | |

Petition for writ of mandate from an order of the Superior Court of Imperial

County.  Juan Ulloa, Judge.  Petition granted.

Kamala D. Harris, Attorney General, Richard F. Wolfe and Paul T. Hammerness,

Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

Terry L. Singleton and Horacio Barraza for Real Parties in Interest.

In this personal injury case, Jerry Rabb sued the State of California and Tony Lee Royer, a State of California employee, (together, Defendants) for injuries resulting from a vehicle collision. The writ proceedings arose in response to the trial court's order denying Defendants' request to compel Rabb to answer deposition questions regarding his methamphetamine use and any related treatment. Defendants argued the evidence was relevant to causation and damages. We conclude the trial court erred in denying Defendants' motion to compel as Rabb's methamphetamine use is relevant to his loss of earning capacity claim and possibly to comparative fault. Accordingly, we grant Defendants' petition for writ of mandate and direct the trial court to enter a new order granting Defendants' motion to compel Rabb's answers.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, Rabb was driving his motorcycle in El Centro, California. While driving a vehicle owned by the State of California, Royer collided with Rabb's motorcycle, causing Rabb to suffer serious injuries. Rabb sued Defendants, seeking to recover damages, including amongst other things, loss of earnings. Defendants admitted that Royer, while acting within the course and scope of his employment, was negligent and that his negligence was a cause and contributed to the accident.

At his deposition in November 2013, Rabb testified that at the hospital after the accident, hospital staff informed him that he had tested positive for methamphetamine. Thereafter, defense counsel asked Rabb if he (1) had an explanation for the positive drug test, (2) had ever used methamphetamine prior to the accident, (3) frequently used methamphetamine prior to the accident, (4) had used methamphetamine since the

2

accident, and (5) had ever obtained treatment for methamphetamine addiction. Rabb's counsel instructed him not to answer these questions, asserting objections based on relevancy and Rabb's Fifth Amendment rights.

Defendants moved to compel answers to the deposition questions regarding Rabb's methamphetamine use and treatment on the basis that the information was relevant to causation and damages. In regard to causation, Defendants argued that although they admitted they were negligent, they did not concede the issue of Rabb's contributory negligence. Thus, Defendants claimed information regarding whether Rabb was impaired by methamphetamine on the day of the accident was relevant to how his driving may have contributed to the accident. In regard to damages, Defendants argued evidence of Rabb's history of methamphetamine use and treatment was necessary to evaluate his loss of earnings claim and health status.

To support their motion, Defendants provided the court with positive methamphetamine results from a urine test performed on the day of the accident. Defendants also provided Rabb's employment records indicating that between 2004 and 2006, his employer routinely drug tested him after he was convicted of driving under the influence. The results of those drug tests were negative; however, out of the 14 tests, Rabb's employer suspected that on five occasions Rabb hydrated himself prior to the test, which resulted in a diluted specimen.

Lastly, Defendants submitted declarations from two doctors regarding the effects of methamphetamine use. Dr. Smith stated that Rabb's test results on the day of the accident indicated he had taken methamphetamine within 24 hours of the accident.

3

According to Dr. Smith, methamphetamine addicts are prone to exhibit erratic and psychotic behaviors, including hallucinations, paranoia and impulsive violent behavior such as road rage. Further, according to Dr. Smith, "[c]hronic meth[amphetamine] users are unable to successfully follow safety instructions and flaunt safety guidelines, including those pertaining to the safe operation of motor vehicles. Meth[amphetamine] use by chronic users impairs brain function with spatial distortion and leads to increased error rates on the job. Studies show that [m]eth[amphetamine] addicts who drive sustain twice the accident rates of unimpaired drivers." Similarly, Dr. Strauser stated chronic methamphetamine use has been linked to problems carrying out daily activities and higher unemployment rates. Based on his review of Rabb's medical records, Dr. Strauser also stated that the trauma surgeon who cared for Rabb on the day of the accident had spoken with Rabb's brother and learned Rabb had "'a situation with methamphetamine.'"

The trial court denied Defendants' motion to compel, concluding they had "laid an insufficient foundation for [their] argument that [Rabb] ha[d] a methamphetamine addiction problem" and the evidence was insufficient "to support a determination that further questioning on the topic would lead to admissible evidence that was actually relevant to the subject matter of the case."

Defendants filed a petition for writ of mandate in this court seeking a writ directing the court to vacate its order denying their motion to compel Rabb's deposition answers. On March 27, 2014, we stayed all further proceedings in the case and directed Rabb to file an informal response. Thereafter, we issued an order to the superior court to

4

show cause as to why this court should not grant the relief Defendants seek in their petition.

DISCUSSION

I. *Motion to Strike*

Rabb filed a motion to strike a portion of the exhibits submitted by Defendants in support of their writ petition. Specifically, Rabb requested that we strike results from a drug scan conducted at the University of California, San Diego Health System in January 2011, several months before the accident, showing he tested positive for methamphetamine. Rabb contends this court should not consider that document because it was not presented to the trial court. Defendants argue the document was not available to them before the court denied their request to compel deposition answers and the information is relevant to show they would be prejudiced as a result of the trial court's ruling.

California Rules of Court, rule 8.486(b)(1) provides that a petition seeking review of a trial court ruling must be accompanied by "[a]ll documents and exhibits *submitted to the trial court* supporting and opposing the petitioner's position" and "[a]ny other documents or portions of documents *submitted to the trial court* that are necessary for a complete understanding of the case and the ruling under review." (Italics added.) The rule does not allow for the petitioner to include new evidence not considered by the trial court. Moreover, "[a]s a general rule, documents not before the trial court . . . must be disregarded as beyond the scope of appellate review." (*Pulver v. Avco Financial Services*

5

(1986) 182 Cal.App.3d 622, 632.)  Accordingly, we grant Rabb's motion to strike and do not consider documents not presented to the trial court in our review.

## II. *Motion to Compel Deposition Answers*

Defendants contend the trial court erred in denying their motion to compel Rabb's answers to deposition questions concerning his methamphetamine use and treatment because that information was relevant to damages and his contributory negligence in the accident.  They also assert Rabb cannot seek civil relief yet to refuse to testify on matters relevant to his recovery based on the privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

"[A]ny party may obtain discovery [through the deposition of a party] regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action."  (Code Civ. Proc., §§ 2017.010, 2025.010.)  "'"No precise or universal test of relevancy is furnished by the law.  The question must be determined in each case according to the teachings of reason and judicial experience."'"  (*Morris Stulsaft Foundation v. Superior Court* (1966) 245 Cal.App.2d 409, 416 (*Morris*).)  "In determining whether questions asked at a deposition pertain to matters 'relevant to the subject matter involved in the pending action' [citation] we heed the caveat that the discovery statutes 'must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial.' [Citations.] . . . [I]t is not a ground for objection that the information sought to be elicited is not admissible at trial if it 'appears reasonably calculated to lead to the discovery of admissible evidence.'"  (*Id*. at p. 417.)

6

"It is settled that the writ of mandate is the proper remedy for reviewing discovery procedures and that the writ may issue not only to enforce a proper discovery right but to prevent improper discovery."  (*Morris*, *supra*, 245 Cal.App.2d at p. 415.)  With the foregoing principles in mind, we consider Defendants' arguments.

As a preliminary matter, we note that Defendants devote a significant portion of their petition to matters outside the scope of our review.  Specifically, Defendants discuss at length an independent medical examination (IME) of Rabb in March 2014.  During that IME, Rabb allegedly refused to discuss the issues of his methamphetamine use, addiction or treatment and provide blood and urine samples for testing.  The IME took place after the trial court's ruling denying Defendants' motion to compel Rabb's deposition answers.  Based on the record before us, it is unclear as to whether the IME was ever considered by the trial court.  As it is not a part of the court's order subject to Defendants' petition, we do not consider any issues concerning the IME.

On the issue of causation, the parties disagree as to whether Defendants admitted complete liability in this case.  Rabb contends causation is not a factor in this case because Defendants admitted full liability whereas Defendants claim they have not conceded the issue of contributory negligence.  If causation is an open factor in this case, we conclude Defendants made a minimal showing of relevancy in regard to comparative fault.  They presented evidence from two doctors regarding how methamphetamine may have impacted Rabb's driving on the day of the collision.  Specifically, the doctors made statements that methamphetamine use can cause erratic and impulsive violent behavior and deficits in cognitive functions.  Further, Dr. Smith explained how chronic

7

methamphetamine users are unable to follow safety guidelines pertaining to the operation of a motor vehicle and sustain twice the accident rates of unimpaired drivers. This evidence was minimally sufficient to show Rabb's methamphetamine use was relevant to the issue of comparative fault.

We also conclude Defendants showed relevancy as to damages. Dr. Smith opined that methamphetamine users have increased error rates on the job and Dr. Strauser stated they have higher unemployment rates. Both doctors stated it was critically important to question Rabb about his drug usage in order to properly evaluate his health status and loss of earnings claim. By making a loss of earning capacity claim, Rabb placed his future earnings at issue and his methamphetamine usage is relevant to a determination of his damages.

Having found relevancy, we must consider whether Rabb could properly rely on his Fifth Amendment privilege against self-incrimination to refuse to answer questions about his methamphetamine usage and any related treatment.

Our review of relevant authority leads us to the conclusion that under these circumstances, Rabb cannot be permitted to insist on "having his cake and eating it too" by asserting a claim for negligence and seeking damages for a purportedly large loss of future earnings while denying Defendants crucial information to evaluate and refute his claims. (*Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168, 175 (*Hartbrodt*); *Fremont Indemnity Co. v. Superior Court* (1982) 137 Cal.App.3d 554, 560 (*Fremont*).) Where a plaintiff puts a factual issue in dispute, he either waives his privilege against self-incrimination or must forego the issue in dispute. (*Fremont*, at p. 560 [where plaintiff

8

initiated an action to recover under his fire insurance policy, he waived his privilege against self-incrimination as to factual issues relevant to policy's arson exclusion]; *Hartbrodt*, at pp. 174-175 [where plaintiff brought action stemming from oral agreement and had recording of alleged oral agreement but refused to disclose it based on Fifth Amendment privilege, court forced disclosure of the recording finding that plaintiff waived privilege against self-incrimination]; *Newson v. City of Oakland* (1974) 37 Cal.App.3d 1050, 1055 [where plaintiff asserted a claim for lost wages and placed his tax records at issue, the court rejected plaintiff's assertion of the privilege against self-incrimination pertaining to his failure to file tax returns].)  Courts have enforced similar waivers of other privileges.  For example, in *Wilson v. Superior Court* (1976) 63 Cal.App.3d 825, 830, the court held that where "plaintiff has placed in issue the existence and the content of her tax returns and the tax consequences of the computations thereon," plaintiff waived the privilege accorded to tax records.  Similarly, in *City & County of S.F. v. Superior Court* (1951) 37 Cal.2d 227, 231, the court stated a physician-patient privilege is waived when plaintiff places his physical condition in issue by filing an action for personal injuries.

Based on the foregoing discussion, we conclude under the circumstances of this case, Rabb's methamphetamine use and treatment is relevant to his loss of earning capacity claim and to comparative fault if it is an open issue in the case.  Rabb cannot continue to assert the privilege against self-incrimination to prevent disclosure of this relevant evidence.  Accordingly, Rabb must answer deposition questions related to his methamphetamine use and treatment.

DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its January 24, 2014, order denying the motion to compel answers to deposition questions and enter an order granting the motion.  The stay issued on March 27, 2014, is vacated.  Defendants are entitled to costs in the writ proceeding.


McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

McDONALD, J.