[Civ. No. 20672. First Dist., Div. One. Oct. 19, 1962.]

ANDREW L. DARBEE, as Executor, etc., et al., Petitioners, v. THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; JULIUS F. CASTELAN, Real Party in Interest.

Brobeck, Phleger & Harrison and David W. Lennihan for Petitioners.

No appearance for Respondent.

Erskine & Tulley and Allen M. Singer for Real Party in Interest.

MOLINARI, J.—This is a petition for a writ of mandate seeking a direction to respondent that it grant petitioners' motion to compel the real party in interest, Julius F. Castelan, to answer certain interrogatories.

On August 7, 1957, the petitioners entered into a written option agreement with Castelan whereby they agreed to convey certain real property to him upon his exercise of said option. The agreement required that the option be exercised within six months from August 7, 1957. By the terms of the agreement the purchase price of $7,000 per acre was to be paid upon delivery of the grant deed as follows: 10 per cent in cash and the balance by Castelan's promissory note payable in 10 equal annual installments. On February 5, 1958, two days before the six months' period expired, Castelan gave notice to the petitioners that he was exercising the option. On April 2, 1958, Castelan requested of petitioners that a survey of the land be made so that the acreage and purchase price could be accurately determined. The petitioners furnished Castelan with a 1942 survey of the property on April 30, 1958, and at the same time requested that a substantial deposit be made on the acreage known to exist. Subsequently an oral agreement was entered into between the parties extending the time within which to place in escrow the deposit

required under the option agreement until July 7, 1958. This oral extension was confirmed by the petitioners by a letter dated June 25, 1958. It is unclear whether there was any activity on the part of the parties from the date of this oral agreement until February 9, 1959, when the petitioners by letter demanded of Castelan the return of certain corporate documents which had been forwarded to him for his perusal and requesting that he do something about rental lost to the petitioners occasioned by Castelan's raising the rent of a tenant on the property causing said tenant to move out. Apparently Castelan had, in the interim, either taken possession of the property or exercised some control over it. Nothing further transpired until May 18, 1960, when the petitioners gave Castelan a written "Notice of Termination of Option by Reason of Defaults." Thereafter on August 16, 1960, Castelan, through his attorneys, informed the petitioners by letter that he had no intention of abandoning his option on the property, claiming that the survey forwarded to him by the petitioners was incomplete and that therefore it was impossible to ascertain the exact acreage and purchase price to be paid. The said attorneys then also stated that Castelan was willing to pay the required sums upon proof of exact acreage and conveyance of sufficient title.

On April 28, 1961, Castelan filed an action against petitioners for specific performance of the option contract and for a declaratory judgment to determine which party has the obligation to ascertain the number of acres subject to the option agreement. The petitioners have answered the complaint, denying, *inter alia*, the plaintiffs allegations " 'that the contract was fair and equitable ' " and " 'that plaintiff has performed all of the terms and conditions of the agreement which he is required to perform and has otherwise performed all conditions precedent to his right to bring suit.' " The petitioners also raise the defenses of abandonment of the contract and laches.

Petitioners took Castelan's deposition. Among the questions asked were several directed to whether anybody had agreed to buy the property from him at the time he exercised the option, and at any time after February 5, 1958, until the day of the taking of said deposition, and also whether during this period he had agreed to sell the property to anyone. Castelan refused to answer these questions, whereupon a motion was made to compel him to answer the questions. In ruling upon the motion a judge of the respondent court stated as follows:

684

"That the other questions involved in this action relating to whether the plaintiff had agreed to sell the property to others at or about the time he attempted to exercise the option in question are relevant to the subject matter of the action and the plaintiff is directed to answer them."

Upon the resumption of the deposition Castelan was again asked the questions hereinabove alluded to and in addition was asked whether he had discussed the sale of the subject property with other people, when he last discussed the possibility of such people buying the property, and whether he had "a person to whom you can resell it right now." Plaintiff refused to answer these or any other questions concerning his resale activities after August 7, 1958, upon the ground that the court had ruled such questions proper only if they related to such activities "at or about the time" he exercised the option in question, stating, as a basis for his refusal that the date August 5, 1958, i.e., six months after the exercise of the option was the outer limit of "at or about." The petitioners thereupon again moved the court to compel answers to said questions, said motion being heard and denied without opinion by another judge of the respondent court.

The petitioners thereupon put several questions relating to the same subject matter to Castelan in the form of written interrogatories. These included the following numbered interrogatories to which Castelan objected, to wit:

" '7. After August 5, 1958 and before the filing of the complaint, did you discuss with anyone the purchase by them from you of the property described in the option agreement?

" '8. State the names and addresses of all persons with whom you had discussions of the kind described in Interrogatory 7.

" '9. State the times and places and persons present at each of the discussions described in Interrogatory 7.

" '10. Have you made any agreements, written or oral, with anyone concerning the disposition of the property described in the option agreement, in the event you should obtain title to it?

" '11. State the names and addresses of each person with whom you have made an agreement or agreements of the kind described in Interrogatory 10.

" '12. State which of any such agreements are written, and which are oral.' "

The form and nature of such objections have not been presented to us other than the statement in the return of the

real party in interest to the effect that he objected to said interrogatories "except as they related to the period from six months prior to until six months subsequent to the time of exercise of the option." The petitioners then moved the court for an order requiring further response to these interrogatories, the motion being heard by a judge other than the two judges who had ruled on the previous motions. Said motion was denied without opinion or the statement of any reasons assigned for sustaining these objections. Petitioners thereupon filed a petition for a writ of mandate to compel the respondent court to order the plaintiff to answer said interrogatories numbered 7 through 12. Upon the basis of said verified petition this court granted its alternative writ.

The following interpretations of the discovery statutes are now well established: Discovery by interrogatories may be had as to any matter which is *relevant to the subject matter* involved in the pending action, provided said matter is not privileged. It is not necessary that such matter be relevant to an issue in the case, and thus admissible at the trial, as long as the testimony sought *"appears reasonably calculated to lead to the discovery* of admissible evidence." (Code Civ. Proc., § 2016, subd. (b); emphasis added.) In determining such relevancy the discovery statutes must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes of denial. (*Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 390-391 [15 Cal.Rptr. 90, 364 P.2d 266]; *Regents of University of California* v. *Superior Court,* 200 Cal.App.2d 787, 789-790 [19 Cal.Rptr. 568]; Code Civ. Proc., § 2016, subd. (b).)

The real party in interest makes no claim of privilege or of improper purpose. Nor does he, in his return to the alternative writ, make any claim of nonrelevancy to the subject matter. In his return he stands upon the proposition that three different judges of the respondent court denied three separate motions to establish a right to interrogate him concerning negotiations engaged in or any contract he entered into for the land subsequent to August 5, 1958. The basis of his return is the ruling of the first judge that such questions were proper only if they related to such activities "at or about the time he attempted to exercise the option in question" and his *own* (Castelan's) "judicial" interpretation that "at or about" means six months prior to and six months subsequent to such time. Tacit approval of the first judge's

statement and the interpretation placed thereon by the real party in interest are read by the latter into the subsequent rulings of the other two judges, both of whom apparently denied the petitioners' motions without comment or without setting forth any reasons or grounds therefor.

When this court issued its alternative writ it necessarily indicated its belief that petitioners had alleged sufficient facts to show, prima facie, an abuse of discretion or a possible abuse of discretion. In making his return to that writ the real party in interest had the opportunity to rebut the prima facie case made by the petitioners. It was his burden to show the facts from which the court might find that the interrogatories were interposed for improper purposes, or that they were directed to subject matter which was not relevant to the pending action, or, in spite of such relevancy, that the information sought was not reasonably calculated to lead to the discovery of admissible evidence. (See *Coy* v. *Superior Court,* 58 Cal.2d 210, 220-221 [23 Cal.Rptr. 393, 373 P.2d 457].)

The showing made by the real party in interest is insufficient to sustain the burden imposed upon him. The only substantiation of the third judge's order (which is the order under attack here) is the first judge's ruling and its interpretation by the real party in interest. The placing by Castelan of a six months' limitation, prior and subsequent to the date of the exercise of the option, amounts to a usurpation of the judicial function and constituted an unwarranted and arbitrary interpretation of the court's language "at or about the time he attempted to exercise the option. . . ." Moreover, the real party in interest loses sight of the fact that the first judge's ruling was in connection with a motion to compel answers *in a deposition.* Even if we were to concede (which we do not) that the first judge's limitation was a proper one, the ruling there made has no connection with our present inquiry. Depositions and interrogatories are different procedures to each of which litigants have the right to resort in the same proceeding for the purpose of pretrial discovery. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 373.) They are not mutually interdependent; nor does the prior use of one procedure exclude the subsequent use of the other. (*Coy* v. *Superior Court, supra,* 58 Cal.2d 210, 218; *Carlson* v. *Superior Court,* 56 Cal.2d 431 [15 Cal.Rptr. 132, 364 P.2d 308].) In the *Coy* case the court pointed out the distinction between the function of the two procedures as follows: "A deposition is not final until read, signed and

filed. Until that time it may be corrected or the answers changed. . . . ■ Certainly an answer in a deposition remains undetermined, or uncertain, until such time as the document is signed. As such it may be valuable as a matter of pretrial discovery. But it does not adequately serve the same purpose as an interrogatory. ■ The function of the latter is twofold. It not only ferrets out relevant information which may lead to other admissible evidence, but it immediately and conclusively binds the answering party to the facts set forth in his reply.'' (Pp. 218-219; footnote omitted.) ■ It should also be pointed out that because the same question has been answered in a previous deposition does not preclude the request for a reply to an interrogatory in the absence of a showing that the requirement of a reply would be unjust, inequitable, oppressive or burdensome. ■ Here, again, the burden of such a showing is upon the one who objects to the interrogatory. (*Coy* v. *Superior Court, supra,* 58 Cal.2d 210, 218.)

The trial court made no assignment of its reasons for denying the motion. We would be resorting to clairvoyance if we undertook to read the first judge's ruling into the third judge's order. ■ The absence of a sufficient showing to sustain the order, and the absence of any reasons or grounds on the part of the trial court for sustaining the objections compel the conclusion that there was an abuse of discretion on the part of the trial court.

We are not unmindful of the *claim* made by the real party in interest in his ''Points and Authorities'' that the information sought is not relevant to the subject matter of the pending action. As we have hereinbefore pointed out, to suffice as a valid objection such claim must be supported by some showing. No such showing was made in the return. We note, moreover, that the real party in interest concedes relevancy to the subject matter in his ''Points and Authorities'' but again reiterates that such relevancy is restricted to the six months' period limitations he himself has set up. He there makes the bold assertion that ''Beyond these limits the information sought by the defendants could have no conceivable relevance to the subject matter of the action.'' He attempts to bolster the assertion by argument which we find unconvincing. Suffice it to say, we cannot see how information which is relevant to the subject matter loses its relevancy one day after the expiration of the arbitrary six months' period. If questions directed to activities occurring within the six

months' period can lead, admittedly, to the discovery of admissible evidence, we fail to see why the same questions directed to any period during the pendency of the action would not reasonably be calculated to do so. ▆▆▆ There can be little doubt that the information sought by these interrogatories was relevant to the subject matter of the pending action. The "subject matter of the action" is the circumstances and facts out of which the cause of action arises; it is the property, contract or other thing involved in the dispute; it is not the act or acts which constitute the cause of action, but describes physical facts in relation to which the suit is prosecuted. (*McAndrews* v. *Chicago, L.S. & E. Ry. Co.*, 162 F. 856, 858 [89 C.C.A. 546]; *Odell Hardware Co.* v. *Scarborough's, Inc.*, 186 S.C. 370 [195 S.E. 631, 633]; *Cantrell* v. *City of Caruthersville*, 359 Mo. 282 [221 S.W.2d 471, 475].) The thing involved here was the option agreement and its enforceability. Any of the physical facts or circumstances bearing upon or touching this agreement would be proper matters for inquiry in the quest for facts which may lead to admissible evidence.

With the subject matter of the pending action in mind it is readily apparent from a mere reading of the interrogatories in question that they are reasonably adapted to the purpose of ascertaining facts which are likely to result in the discovery of admissible evidence. The petitioners in their argument indicate that the testimony sought is calculated to produce evidence of Castelan's inability or unwillingness to pay, his abandonment of the contract, his reasons for the 26-month period of silence, his delay for speculative reasons bearing upon the question of laches, inadequacy of the price, the highest and best use of the property for valuation purposes, and the identity of the parties having the actual or beneficial interest in said option. The testimony elicited might be admissible as direct evidence bearing on the issues or it may be adaptable to the purposes of impeachment. ▆▆▆ It may develop that the facts discovered will not serve either purpose or that the petitioners have no thought of producing those facts at the trial. These circumstances do not necessarily preclude the discovery of the facts sought because the intent of the new discovery procedures is to discover facts for trial preparation as well as for use at the trial itself. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 372.) ▆▆▆ In countering the petitioners' argument the real party in interest falls into the common pitfall of attempting to dem-

onstrate that the answers to these interrogatories would not be relevant to the *issues* and therefore would not be admissible at the trial. In the adoption of the discovery statutes the Legislature intentionally did away with the older test of materiality to the *issues* and substituted therefor the test of relevancy to the *subject matter.* (*Coy* v. *Superior Court, supra,* 58 Cal.2d 210, 217.) Accordingly the claim that an interrogatory is not relevant to the issues is without merit as is the objection that in any event the facts sought could not be presented at the trial. The ultimate right to present at the trial the facts sought by the interrogatories is not the criterion upon which the right to interpose them is based.

The admissibility of the sought testimony or the probabilities of the inquiring party's questions leading to relevant evidence are not subject to predetermination during the discovery stages of the case as long as the desired testimony seems ''reasonably calculated'' to lead to relevant evidence. We cannot define what will be relevant evidence in the case prior to trial, but must wait for the trial itself; and even then, the '' 'question must be determined in each case according to the teachings of reason and judicial experience'; . . .'' (*Moody* v. *Peirano,* 4 Cal.App. 411, 418 [88 P. 380]; *Regents of University of California* v. *Superior Court, supra,* 202 Cal.App. 2d 787, 794; Witkin, Cal. Evidence, § 113, p. 135.)

It is therefore ordered that a peremptory writ of mandate issue directing the respondent court to vacate the order denying the motion for further answers, and to enter an order requiring further answers to the said interrogatories.

Bray, P. J., and Sullivan, J., concurred.