[L.A. No. 29650. In Bank. Mar. 13, 1970.]

PACIFIC TELEPHONE AND TELEGRAPH
COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY,
Respondent; JAMES DUKE, Real Party in Interest.

## COUNSEL

Eugene L. Freeland, Richard Alexander Burt, Timothy V. McFarland, Michael Justin Myers and Gray, Cary, Ames & Frye for Petitioners.

No appearance for Respondent.

Casey, McClenahan & Fraley and Thomas W. Hauser for Real Party in Interest.

## OPINION

**TOBRINER, Acting C. J.**—Pacific Telephone and Telegraph Company and two of its employees, William Parr and Glenn German, seek a writ of prohibition to restrain the Superior Court of San Diego County from enforcing an order requiring response to 97 questions propounded during pretrial oral depositions[1] on the ground that the questions are irrelevant

---

[1] The questions challenged arose during the course of three separate deposition proceedings. Petitioners Parr and German were the subjects of two of the depositions;

to the pending litigation. We have concluded that in light of the liberal and necessarily flexible standard of "relevancy" delimiting the arena of discoverable matter, the trial court did not abuse its discretion in ordering the deponents to answer the contested inquiries.

This petition for writ of prohibition arises out of litigation instituted by James Duke,[2] the real party in interest, against Pacific Telephone and Telegraph Company and its employees Parr and German, based on an alleged invasion of privacy through unauthorized wiretapping. According to Duke's second amended complaint, filed on June 23, 1967, the individual defendants, employed in the Security Division of PT & T's San Diego office, "deliberately and maliciously" installed, in March 1966, an interception device on his telephone line without his knowledge or consent for the sole purpose of eavesdropping on all telephone calls initiated and received by him. Defendants allegedly knew, at the time of this monitoring, that their actions constituted an invasion of Duke's privacy and were "illegal."[3]

a third employee of Pacific Telephone and Telegraph Company, Harold Behrns, was the subject of the third.

[2]Hereafter James Duke, the real party in interest and plaintiff in the underlying litigation, will be referred to as either "Duke" or "plaintiff." Petitioners Pacific Telephone and Telegraph Company, Parr, and German, defendants in the underlying civil action, will be referred to collectively as "defendants." Pacific Telephone and Telegraph Company will be designated, individually, as either "PT & T" or "the telephone company," and the individual defendants will be referred to by their respective names.

[3]At the time of the unauthorized monitoring, section 640 of the Penal Code provided: "Every person who, . . . wilfully . . . or clandestinely taps, or makes any unauthorized connection with any telegraph or telephone wire, . . . or who . . . uses . . . any information so obtained; . . . is punishable by imprisonment in the state prison not exceeding five years, or by imprisonment in the county jail not exceding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment."

In 1967, the foregoing proscription of wiretapping in Penal Code section 640 was reenacted as part of a comprehensive statutory scheme covering invasion of privacy; under the present penal statutes, sections 631, 632, 634, and 637 all deal with different aspects of the wiretapping or eavesdropping crime generally covered previously by section 640. Section 637.2 specifically creates a private right of action in individuals injured through any violation of the new privacy chapter; the section permits an injured party to collect $3,000, or three times the amount of actual damages, whichever is greater. The current sections 631 and 632 do contain an exception applicable to some operations performed by the telephone company, but these exceptions do not appear to permit the telephone company to make unauthorized wiretaps solely for its own personal investigations.

In 1968, the United States Congress passed comprehensive penal legislation to deal with the problems of wiretapping and electronic eavesdropping generally. (18 U.S.C. §§ 2510-2520.) The act excepts from its prohibition the interception of communication by public telephone company employees performed in the course of their employment "*Provided,* that said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality

The complaint additionally claims that through the continued use of the intercepting or "bugging" devices, defendants acquired information which they communicated to the San Diego Police Department. Allegedly as a result of this communication, Duke was arrested and charged with numerous felonies; although these charges were subsequently dismissed, the initial arrest, executed while Duke was at work, purportedly led to Duke's discharge from his job, to which he has not been rehired. The complaint declares that Duke has suffered substantial actual injury as a result of the defendant's "malicious" invasion of his privacy and prays for general and punitive damages.

Defendants initially filed an unverified answer containing a general denial to the allegations of the complaint. Plaintiff Duke thereafter began his attempt at discovery; on October 30, 1967, plaintiff served interrogatories on defendant Parr, which were answered on November 28, 1967.[4] In February 1968, upon due notice, a deposition of defendant Parr was undertaken but not completed because of Parr's refusal to answer some questions. Several months thereafter, on May 28, 1968, again upon proper notice, plaintiff took the depositions of defendants Parr and German, and non-defendant Behrns. Questions propounded at those three oral depositions are challenged in the instant petition for a writ of prohibition.

The inquiry at all three depositions apparently followed a similar pattern and, upon the advice of defendants' counsel, all deponents refused to answer questions which might be loosely described as being of a "general" nature. Although the questions to which the three deponents declined to respond differed in some respects, the questions can be satisfactorily classified into four categories:[5] (1) questions relating to the procedure used in

control checks." (18 U.S.C. § 2511(2)(a).) The act establishes a detailed procedure by which applications by law enforcement officials, for permission to undertake investigatory monitoring measures, are to be submitted to a judicial official for approval *prior* to the monitoring. (18 U.S.C. § 2518.)

[4]A declaration by plaintiff's counsel, accompanying the brief in opposition to this writ of prohibition, discloses two of the interrogatories answered by defendant. (1) "Q. How many times prior to March, 1966 have you monitored telephone calls of subscribers of Pacific Telephone & Telegraph without the knowledge of the subscriber? A. Thousands of times." (2) "Q. How many times have you directed employees of Pacific Telephone & Telegraph to monitor telephone calls of subscribers of Pacific Telephone & Telegraph without the knowledge of said subscribers prior to March, 1966? A. Thousands of times."

The responses to these interrogatories apparently formed the basis for one line of inquiry, undertaken by plaintiff's counsel at the subsequent depositions, which is under attack in the present proceeding.

[5]The deponents apparently refused to answer at least 113 questions during the May 28, 1968, proceedings. The superior court, however, declined to compel the deponents to answer 16 of those questions. The content of the 16 questions rejected by the

making unauthorized taps of phone conversations (training of personnel, equipment, authority among employees); (2) questions relating to the deponent's knowledge of the illegality of unauthorized monitoring; (3) questions relating to a possible working relationship between the San Diego Police Department and the Security Division of PT & T; and (4) questions relating to the monitoring of telephone conversations of subscribers other than plaintiff, including the frequency of such monitoring and the experience of deponent in such monitoring generally.[6]

Following the refusal of the deponents to answer these numerous inquiries on May 28, 1968, plaintiff filed three motions with the superior court, to compel the deponents to answer the posed questions. (Code Civ. Proc., § 2034.) Defendants opposed the motion on the ground that the questions were irrelevant to the litigation and therefore not proper matters for discovery. Following oral argument and a review of the parties' respective memoranda of points and authorities, the superior court, on September 6, 1968, issued an order compelling answers to 97 of the challenged questions.

Four days later, on September 10, 1968, defendants apparently attempted to narrow the issues of the litigation and thereby avoid the searching discovery approved by the trial court. Defendants filed an amended answer admitting that they had attached a tape recorder to the plaintiff's telephone line without his knowledge and consent and had recorded and subsequently examined the content of plaintiff's telephone conversations.[7] Defendants

---

superior court is not revealed in any of the material that has been filed with this court. The categorization that follows in the text rests only on the 97 questions which the trial court did order the deponents to answer.

[6]The following is a representative sample of the type of questions included in each category:

(1) General monitoring procedure: "Do you use any other equipment than the tape recorder in your office here in the Bank of America Building to monitor telephone calls without the knowledge and permission of the subscriber?" (Deposition of German, No. 21.)

(2) Knowledge of illegality of actions: "You knew you weren't supposed to eavesdrop on a subscriber's telephone without permission, didn't you?" (Deposition of Parr, No. 16.)

(3) Communication to police: "Prior to March of 1966 have you ever been requested by the San Diego Police Department, or any other law enforcement agency to monitor or intercept telephones of subscribers of the Pacific Telephone & Telegraph Company without knowledge or consent of the subscriber?" (Deposition of Behrns, No. 4.)

(4) Monitoring of other subscribers: "Do you have any idea how many times prior to March 1966 you or any other member of the Security Agency of the Pacific Telephone & Telegraph Company has monitored telephone calls without the knowledge and permission of the telephone subscriber?" (Deposition of German, No. 17.)

[7]Defendant PT & T also admitted that the two individual defendants, Parr and German, had acted within the scope of their employment in performing the moni-

continued to deny, however, that they knew that their action constituted an invasion of privacy or was illegal or that their conduct was "malicious"; they contended, instead, that the purpose of making a tape recording of the phone conversations was to learn the identity of plaintiff's accomplices, who, with the plaintiff, had allegedly perpetrated crimes against the telephone company. Defendants alleged that the arrest of plaintiff described in the complaint involved his participation in a burglary of a telephone booth, but they disclaimed any communication between the telephone company and the police that resulted in plaintiff's arrest; they further denied the infliction of any damages upon plaintiff. Finally, in this amended answer defendants proffered two affirmative defenses: (1) that any communication between the telephone company and the police was true and (2) that plaintiff was guilty of the criminal charges that had been dismissed.

In substance, in admitting the interception of plaintiff's phone conversations but denying liability, defendants maintain that their unauthorized monitoring was justified by plaintiff's alleged criminal activity against telephone company property. In pleading plaintiff's guilt of burglary as an affirmative defense, defendants apparently contend that their invocation of monitoring as a form of investigatory "self-help" "excuses" the consequent invasion of plaintiff's privacy; or, stated in another way, defendants seem to claim that under these circumstances interception of telephone conversations constitutes justifiable non-tortious behavior reasonably adopted to protect the telephone company's own property.

At this time, we have no occasion to pass on the validity of this seemingly novel defense to an invasion of privacy action.[8] The instant petition does not arise on direct appeal from the litigation, but was filed in October 1968 as an attack on the superior court's order of September 6, 1968, which required deponents to answer 97 questions to which they had earlier refused to respond. Defendants' sole objection here is that the disputed inquiries are irrelevant to the litigation, and thus not properly discoverable under section 2016, subdivision (b), of the Code of Civil Procedure; they claim that the superior court exceeded its jurisdiction in ordering the deponents

---

toring activities; it conceded that the telephone company would be liable for any damages its agents might incur in connection with the litigation.

[8]Although our research has not disclosed any California cases involving an action asserting an invasion of a right to privacy by eavesdropping or wiretapping, a number of other jurisdictions have upheld suits for invasion of privacy against public telephone companies in connection with unauthorized monitoring. (See, e.g., *Fowler* v. *Southern Bell Tel. & Tel. Co.* (5th Cir. 1965) 343 F.2d 150; *LeCrone* v. *Ohio Bell Tel. Co.* (1963) 120 Ohio App. 129 [201 N.E.2d 533, 536-537, 540].) Because of the relatively recent appearance of the tort of invasion of privacy, the terrain of applicable defenses remains generally unmapped.

to answer these questions.[9] Defendants seek a writ of prohibition to restrain the superior court from enforcing its order.

Initially, we must consider the availability of the prerogative writ sought by the defendants in this setting. We spoke directly to the question of the circumstances that would normally justify the invocation of an extraordinary writ in discovery cases in *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]: "The prerogative writs have been used frequently to review interim orders in discovery cases [citations]. But this does not mean that these discretionary writs will or should issue as of course in all cases where this court may be of the opinion that the interim order of the trial court was erroneous. In most such cases, as is true of most other interim orders, the parties must be relegated to a review of the order on appeal from the final judgment. As inadequate as such review may be in some cases, the prerogative writs should only be used in discovery matters to review questions of first impression that are of general importance to the trial courts and to the profession, and where general guidelines can be laid down for future cases."

Despite this express declaration of the necessary limitations on the availability of the prerogative writs, and our reaffirmance of this standard in subsequent cases (see, e.g., *Associated Brewers Distributing Co.* v. *Superior Court* (1967) 65 Cal.2d 583, 585 [55 Cal.Rptr. 772, 422 P.2d 332]; *Waters* v. *Superior Court* (1962) 58 Cal.2d 885, 890 [27 Cal.Rptr. 153, 377 P.2d 265]), at least some appellate courts have apparently continued to consider prerogative writs as the normal instruments for reviewing discovery orders. (E.g., *Peck's Liquors, Inc.* v. *Superior Court* (1963) 221 Cal.App.2d 772, 775 [34 Cal.Rptr. 735] ("When, in discovery proceedings, the trial court issues its order requiring answers to questions propounded, a petition for writ of prohibition is a proper remedy by which a petitioner may seek review of the propriety of that order."); *Poeschl* v. *Superior Court* (1964) 229 Cal.App.2d 383 [40 Cal.Rptr. 697]; *O'Brien* v. *Superior Court* (1965) 233 Cal.App.2d 388, 390 [43 Cal.Rptr. 815].) We realize, of course, that this practice rests primarily on a legitimate concern with the inade-

---

[9]In the instant case it appears from papers before us that the defendants, after filing this petition for writ of prohibition with the Court of Appeal, also moved for a protective order under section 2019, subdivision (b)(1), of the Code of Civil Procedure. The efficient administration of justice requires that a party exhaust his procedural remedies in the trial court before seeking extraordinary relief from the appellate courts. The ordering of the procedural moves by defendants raises the suspicion that the primary objective of such strategy could possibly be delay. If the trial court should so find when it passes upon the motion under section 2019, subdivision (b)(1), appropriate sanctions (see § 2034) could be imposed.

Hereafter, unless otherwise stated, all section references are to the Code of Civil Procedure.

quacies of a review of discovery orders after trial,[10] and that even under the approach adopted in *Oceanside* such inadequacy will inevitably influence a court's evaluation of the "general importance" of the question presented.

Nevertheless, appellate courts must keep in mind that too lax a view of the "extraordinary" nature of prerogative writs, rendering substantial pre-trial appellate delay a usual hazard of the use of discovery, is likely to result in more harm to the judicial process than the denial of immediate relief from less significant errors. In our judgment, the lack of general import of the petitioner's objections in the instant case might well in itself have presented a persuasive ground for an immediate denial of the writ sought.[11] Since the Court of Appeal has already issued an order to show

---

[10]See generally D. Louisell, Modern California Discovery (1963) § 2.12, pp. 37-39.

[11]Indeed we note an additional objection that might properly have been initially raised against the granting of an extraordinary writ to prohibit discovery when the deponent urges as the sole objection the irrelevancy of the sought information to the litigation. In most of the cases in which this court has approved the use of a prerogative writ as a means of contesting a trial court's rulings on discovery matters, objection has been raised to a *denial* of discovery by the trial court (e.g., *Carlson* v. *Superior Court* (1961) 56 Cal.2d 431 [15 Cal.Rptr. 132, 364 P.2d 308]; *Hauk* v. *Superior Court* (1964) 61 Cal.2d 295 [38 Cal.Rptr. 345, 391 P.2d 825]); challenges to the *grant* of discovery have only arisen before this court when the trial court order allegedly violated a privilege of the petitioning party. (See *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 186 [23 Cal.Rptr. 375, 373 P.2d 439].) The objection to the trial court's grant of discovery on "irrelevancy" grounds is of an entirely different nature which generally will not support the issuance of an extraordinary writ.

In *West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 415 [15 Cal.Rptr. 119, 364 P.2d 295], this court, quoting *Ryan* v. *Superior Court* (1961) 186 Cal.App.2d 813, 816-817 [9 Cal.Rptr. 147], declared: "One of the prime purposes of the Discovery Act is to expedite the trial of the action. This purpose will be defeated if appellate courts entertain petitions for prerogative writs by which a review of the orders of trial courts in discovery proceedings are sought and which do not clearly demonstrate an abuse of discretion where discovery is denied, *or a violation of privilege or of the provisions of section 19 of article I of the Constitution of the state where discovery is granted.* This court will hereafter refuse to entertain petitions for prerogative writs in discovery matters which do not allege facts which would entitle the petitioner to the relief sought under the principles we have set forth." (Italics added.) (See also *Flora Crane Service, Inc.* v. *Superior Court* (1965) 234 Cal.App.2d 767, 776 [45 Cal.Rptr. 79].)

In the instant case, the petition attacking the granting of discovery does not rest on the violation of a privilege or a constitutionally protected interest, but relies solely on the asserted "irrelevancy" of the questions approved by the trial court. Section 2016, subdivision (b), does expressly require that the information sought by deposition must be relevant to the subject matter of litigation, and we recognize, of course, that under the approach approved in *West Pico* some deponents will be compelled to disclose information which an appellate court might conclude was not "relevant to the subject matter" of the litigation even under the applicable liberal standards. Nevertheless, the burden on the deponent of disclosing matter which is not privileged but only irrelevant to a particular action will generally not be too onerous; we believe he may be required to absorb this burden if the discovery process is to achieve its purposes of improving the efficiency and integrity of the judicial process.

cause, however, and since the plaintiff did not raise this point either before the Court of Appeal or this court, and since the case has been fully briefed on the merits, we proceed to evaluate the main contention raised by the petition. (See *Rosemont* v. *Superior Court* (1964) 60 Cal.2d 709, 712 [36 Cal.Rptr. 439, 388 P.2d 671].)

In reviewing an order of a superior court granting discovery, we recognize at the threshold that "the discovery statutes vest a wide discretion in the trial court in granting or denying discovery" and "such exercise [of discretion] may only be disturbed when it can be said that there has been an abuse of discretion." (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 378, 380 [15 Cal.Rptr. 90, 364 P.2d 266].) In *Greyhound,* however, we regarded the matter sufficiently important to state clearly that in passing on orders *denying* discovery appellate courts "should not use the trial court's discretion argument to defeat the liberal policies of the statute." (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 378-379.) Appellate courts must keep the liberal policies of the discovery statutes equally in mind when reviewing a decision *granting* discovery. In this context, absent a showing by the petitioner that a substantial interest will be impaired by the discovery, the liberal policies of the discovery rules will generally counsel against overturning the trial court's decision granting discovery. In particular, as we discuss below, in instances in which the attack rests on the allegedly overbroad interpretation of the "relevancy" criterion of section 2016, subdivision (b), a limitation on appellate reversal finds support in the broad, flexible nature of the relevancy standard.

Section 2016, subdivision (b), which parallels rule 26(b) of the Federal Rules of Civil Procedure,[12] states in pertinent part: "Unless otherwise

---

This approach does not leave fundamental interests of the deponent without protection. The procedural guidelines of *West Pico* permit a deponent to seek a prerogative writ when an order granting discovery violates a privilege (see *Nowell* v. *Superior Court* (1963) 223 Cal.App.2d 652, 653-654 [36 Cal.Rptr. 21, 2 A.L.R.3d 853] (attorney-client privilege)) or intrudes upon a constitutionally secured right to privacy. Moreover, section 2019, subdivision (b)(1), grants the trial court broad discretion in formulating protective orders upon the application of a deponent, in response, for example, to a claim that a request is too burdensome, oppressive or embarrassing. By highlighting the specific objectionable nature of a given inquiry, in a motion under section 2019, subdivision (b)(1), rather than raising the more general attack of "irrelevancy," a deponent can focus the trial court's attention on the claimed inequity; this focus should produce a more exact evaluation of the benefits and burdens of permission for the inquiry and may enable the court to fashion a protective order which will remove the onerous aspect of the discovery procedure without unduly narrowing the scope of ascertainable matters. (See *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 383 [15 Cal.Rptr. 90, 364 P.2d 266].) Generally, needed protection should be granted on application of a deponent under section 2019, rather than through reliance upon the relevancy concept. (See Wright, Federal Courts (1963 ed.) pp. 310-311.)

[12]Rule 26(b) provides in part: "Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not

ordered by the court as provided by subdivision (b) or (d) of section 2019 of this code, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party, or to the claim or defense of any other party . . . . It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." ■ Although the second sentence of section 2016, subdivision (b) ("reasonably calculated to lead to the discovery of admissible evidence"), gives some guidance for determining what is "relevant to the subject matter" "[n]o precise or universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience." (*Regents of University of California* v. *Superior Court* (1962) 200 Cal.App.2d 787, 794 [19 Cal. Rptr. 568] (quoting *Moody* v. *Peirano* (1906) 4 Cal.App. 411, 418 [88 P. 380]).)

Although we have not been able to articulate a single, comprehensive standard of relevancy, we have established a few guidelines. ■ Past cases make clear that the "relevancy of the subject matter" criterion is "a broader concept than 'relevancy to the issues,' " (e.g., *Chronicle Publishing Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 560 [7 Cal.Rptr. 109, 354 P.2d 637]) the test which prevailed prior to the enactment of the current discovery scheme. Matters sought are properly discoverable if they will aid in a party's preparation for trial. (See *Morris Stulsaft Foundation* v. *Superior Court* (1966) 245 Cal.App.2d 409, 423 [54 Cal.Rptr. 12]; cf. *Carrier Mfg. Co.* v. *Rex Chainbelt, Inc.* (E.D. Wis. 1968) 281 F.Supp. 717, 718.) ■ In addition, because all issues and arguments that will come to light at trial often cannot be ascertained at a time when discovery is sought, courts may appropriately give the applicant substantial leeway,[13] especially

---

privileged, which is relevant to the subject matter involved in the pending action, whether it relates to a claim or defense of the examining party or to the claim or defense of any other party . . . . It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

The entire California statutory reform of discovery procedures in 1957 was framed in large part after the federal discovery rules. In 1968, the Federal Rules Advisory Committee proposed a major overhaul in the federal discovery rules as a response to problems that had developed since the original adoption of the rules. (See generally 43 F.R.D. 211 (1968).) The substance of rule 26(b), however, was not altered in the committee's suggested amendments; the broad "relevancy to the subject matter" standard for the scope of discovery was retained. (43 F.R.D. 211, 225.)

[13]See 1 DeMeo, California Deposition and Discovery Practice, paragraph 2.26, pages 83-84: "Since the matters in dispute between the parties are not as well determined at discovery examinations as at the trial, courts of necessity must follow a more liberal standard as to relevancy. The scope of examination should not be limited unless the information sought is clearly privileged or irrelevant, and inquiry should not be

when the precise issues of the litigation of the governing legal standards are not clearly established (cf. *Tatkin* v. *Superior Court* (1958) 160 Cal. App.2d 745, 752-765 [326 P.2d 201]); a decision of relevance for purposes of discovery is in no sense a determination of relevance for purposes of trial.[14]

■ In sum, the relevance of the subject matter standard must be reasonably applied;[15] in accordance with the liberal policies underlying the discovery procedures, doubts as to relevance should generally be resolved in favor of permitting discovery (cf. *Chapin* v. *Superior Court* (1966) 239 Cal.App.2d 851, 855-859 [49 Cal.Rptr. 199].)[16] Given this very liberal and flexible standard of relevancy, a party attempting to show that a court abused its discretion in finding material relevant for purposes of discovery bears an extremely heavy burden. ■ An appellate court cannot reverse a trial court's grant of discovery under a "relevancy" attack unless it concludes that the answers sought by a given line of questioning cannot as a reasonable possibility lead to the discovery of admissible evidence or be helpful in preparation for trial.

■ With these principles in mind, we turn to the contention of the instant petitioners that the trial court abused its discretion in finding the

---

limited to matter relevant only to the precise issues presented by the pleadings." (Fns. omitted.) (Quoted with approval in *Beverly Hills Nat. Bank & Trust Co.* v. *Superior Court* (1961) 195 Cal.App.2d 861, 865 [16 Cal.Rptr. 236].)

[14]Cf. 43 F.R.D. 211, 229 (Comment of the Federal Rules Advisory Committee).

[15]Commentators have suggested that in recognition of the practical operational problems involved, the "relevancy" test should perhaps expand and contract according to the size and complexity of the case. Thus in a small case dealing with facts and issues of moderate quantity, the trial court could adopt a very relaxed view of relevancy and still keep the discovery under control; in a large, complex case dealing with numerous and diverse issues, a court could adopt more restrictive standards to contain discovery within manageable limits. (See *Developments in the Law—Discovery* (1961) 74 Harv.L.Rev. 940, 1008; *The Practical Operation of Federal Discovery* (1952) 12 F.R.D. 131, 143 (remarks of Mr. Connelly).) Under such an approach, in which the size of the litigation and the amount of prior discovery constitute important factors, we would, then, substantially defer to a trial court determination that certain inquiries should be permitted.

[16]Cf. *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 383 ("When disputed facts provide a basis for the exercise of discretion, those facts should be liberally construed in favor of discovery, rather than in the most limited and restrictive manner possible.")

A liberal application of the relevancy criterion should also contribute to the efficiency of the entire discovery process. The draftsmen of our statutory reform of discovery contemplated that, except in a few designated areas, the discovery procedure would operate extrajudicially and that generally a deponent will not refuse to answer questions relating to unprivileged matter, on the grounds of irrelevancy, but will save such objections for trial. (See, e.g., § 2021, subd. (c)(1).)

The efficacy of this extrajudicial operation can be significantly undermined if the party who is the subject of discovery continually refuses to answer questions on the ground of irrelevancy; each refusal requires the party seeking discovery to go to the

challenged questions relevant to the subject matter of the pending litigation. To facilitate analysis and discussion we treat the questions in the four categories we have set out above.

### 1. *Relevancy of questions dealing with general monitoring procedures*

The first category of questions inquires into the general monitoring procedures of the telephone company. The queries seek information concerning (a) the type of equipment generally used in unauthorized interceptions of phone conversations, (b) the monitoring training program provided by the telephone company, and (c) the chain of authority and supervisory responsibility of telephone personnel involved in wiretapping decisions. Defendants claim that these inquiries concerning general procedure are irrelevant and thus not discoverable because they have admitted in their answer that they did, in fact, monitor plaintiff's phone conversation by attaching a tape recorder to his phone line; defendants assert that this admission removes the issue of their actual interception from the case and, we infer, that therefore plaintiff thus establishes no need to learn of their general procedures. This contention contains a number of basic flaws which run through all of the defendants' arguments.

First, the defendants erroneously assume that by admitting participation in the eavesdropping in their pleading, and thereby ostensibly narrowing the issues for trial, they have also narrowed the scope of permissible discovery. ■ Although one of the purposes of discovery is to permit the parties to learn the issues on which they are in agreement and thereby simplify the trial (see *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 376), one party, by conceding some matters, cannot unilaterally close the door to all discovery concerning that concession. ■ Section 2016, subdivision (b), provides a test of relevancy of the subject matter, *not* relevancy of the issues (see, e.g., *Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 217 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678]; *Darbee* v. *Superior Court* (1962) 208 Cal.App.2d 680, 688-689 [25 Cal.Rptr. 520]) and "[t]he relevancy [of the subject matter of the action] is to be determined . . . by the potential as well as actual issues in the case." (*McClatchy Newspapers* v. *Superior Court* (1945) 26 Cal.2d 386, 394-395 [159 P.2d 944]; *Tatkin* v. *Superior Court, supra,* 160 Cal.App.2d 745, 752-765.) Even if, by concession in a pleading a party removes, perhaps temporarily, a given

courts for aid and thus works a significant delay in the discovery process. A strict, rigid interpretation of the relevancy requirement of section 2016, subdivision (b), would probably lead recalcitrant parties to attempt to construct an "irrelevancy" barrier to discovery more frequently; on the other hand, a more fluent, liberal interpretation may discourage resort to this kind of delaying tactic. ■

issue from the case, the scope of discoverable information will not necessarily be narrowed.

Second, defendants, overrating the effect of their admission as to unauthorized monitoring, misjudge the nature of the issues remaining in controversy after their answer. Although in their amended answer defendants admit that they attached a tape recorder to plaintiff's phone, the answer specifically denies that, as the complaint alleges, they listened to *all* telephone conversations from the plaintiff's phone. Furthermore, defendants' pleading, denying that the monitoring was malicious, apparently asserts that their activities were reasonable in light of the plaintiff's alleged criminal acts. By proffering this novel "reasonableness" defense in an invasion of privacy action, defendants have significantly increased the matters that will be potentially relevant at trial.

The introduction of this new legal theory, the "reasonableness" defense, after almost a year of discovery, illustrates, quite clearly, the difficulties inherent in any attempt to confine the relevancy standard to a rigid formula: frequently, as in the instant case, the nature of the facts that will be relevant and admissible at trial cannot accurately be determined at the pretrial stage of application for discovery. Thus, for example, we now know that the subject matter of the action may include not only the facts concerning the actual monitoring of the phone line and possible eavesdropping and communications with the police, as initially suggested by the allegations of the complaint, but also may encompass the information relied on by the defendants before their decision to monitor, including the reasonableness of the scope and intensity of the intrusion into plaintiff's privacy. We could not properly rule at this time on either the validity of this asserted affirmative defense, or on the evidence which may be relevant to it, if proper; in any case, whether the defense is a valid one or not, the parties are entitled to undertake discovery with reference to the matters potentially involved. (See *Chapin v. Superior Court, supra,* 239 Cal.App.2d 851, 858-859.)

Viewing the litigation in its present posture, we find that the trial court clearly did not abuse its discretion in determining that the questions of the first category are relevant to the subject matter of the action. The questions requesting general information about the wiretapping equipment, training, and method, may lead to the discovery of evidence useful in challenging the defendant's allegations that the interception consisted only of a tape recording of some phone conversations of the plaintiff. For example, the answers may reveal whether or not the tape recorder was left unattended, a fact potentially relevant to the issue of reasonableness of intrusion. The inquiries concerning the division of authority within the Security Division of the telephone company would not only identify the individuals who

might be individually liable to defendant but may illustrate the telephone company's negligence in allocating authority—information possibly useful in rebutting the defendants' contention that their conduct was reasonable. Although the defendant telephone company has admitted that the individual defendants were acting within the scope of their employment while performing the eavesdropping activity, the removal of this issue from the trial, as noted above, does not mean the facts surrounding the eavesdropping training program are no longer relevant to the *subject matter* of the litigation.

### 2. Relevancy of questions involving the deponents' knowledge of illegality of actions

■   The second category of questions pertains to whether or not the employees who allegedly performed the unauthorized eavesdropping knew, when they performed their normal work, that their activity was illegal. Although the questions as phrased were not confined to the interception of plaintiff's phone, the answers to the questions would reflect the state of mind of the deponents at the time of the monitoring on which the action rests. Although conceivably defendants might have sought a section 2019, subdivision (b), protective order requiring that the question be rephrased in more specific terms (see *West Pico Furniture Co.* v. *Superior Court, supra,* 56 Cal.2d 407, 419), the generality of the inquiry did not render it irrelevant within the meaning of section 2016, subdivision (b). (See *Flora Crane Service, Inc.* v. *Superior Court, supra,* 234 Cal.App.2d 767, 778; *Morris Stulsaft Foundation* v. *Superior Court, supra,* 245 Cal.App.2d 409, 423.) Since the complaint specifically alleged that defendants eavesdropped with knowledge of the illegality of their acts, and the answer expressly denied this allegation, this category of questions, under any possible interpretation of relevancy, clearly relates to the subject matter of the litigation.

### 3. Relevancy of questions inquiring into the telephone company's communications with police

■   The third category of questions seeks information concerning a possible general practice of the employees of the Security Division in communicating with the San Diego police. These questions are similar to those of category two: although generally phrased, they encompass the procedures apparently followed with respect to plaintiff's case. Since defendants expressly denied in their answer that any information relayed to the police resulted in plaintiff's arrest or that plaintiff had suffered any damages from the arrest, again under any test of relevancy, the facts surrounding communications to the police relate to the subject matter of the action.

Moreover, because of the alleged illegality of the eavesdropping procedure, the connection with the police may potentially involve an additional

issue. One of the questions which deponents refused to answer asks: "Prior to March of 1966 have you ever been requested by the San Diego Police Department, or any other law enforcement agency, to monitor or intercept telephones of subscribers of the Pacific Telephone and Telegraph Company without knowledge or consent of the subscriber?" An affirmative answer to this question could lead to additional inquiries revealing such complicity between the police and the telephone company as to render the information obtained by the interception "illegally obtained evidence" within the meaning of the state and federal Constitutions. (Cf. *Stapleton v. Superior Court* (1968) 70 Cal.2d 97 [73 Cal.Rptr. 575, 447 P.2d 967].) Conceivably, if defendants attempt to introduce the information obtained by the eavesdropping to prove plaintiff's "guilt" of burglary (one of their affirmative defenses), plaintiff might urge that this "illegally obtained evidence," inadmissible at a criminal trial, should similarly be excluded from civil actions.[17] Again we need not pass on the validity of such a potential contention; we only note this possibility to illustrate the necessarily wide boundaries of the relevancy standard, and to demonstrate that the trial court's conclusion clearly does not constitute an abuse of discretion.

### 4. *Relevancy of questions relating to the monitoring of other subscribers*

■ The fourth category of questions inquires into (a) the existence of a general telephone company practice of unauthorized monitoring and (b) the number of subscribers who have been subjected to unauthorized eavesdropping. These questions, unlike those in the three categories above, do not encompass the eavesdropping of the plaintiff, and it is with respect to these questions that the defendants' objections in this petition are primarily addressed. A representative question of this category inquires: "How many times have you monitored telephone calls without the knowledge or permission of the subscriber?"

Defendants contend that such questions are irrelevant to the litigation because they are not reasonably calculated to lead to the discovery of admissible evidence *on an issue which is in dispute.* Defendants apparently do not deny that to the extent that responses to these questions "would

---

[17]The few cases which have considered whether the exclusionary rule is generally applicable to proceedings civil in nature between private litigants (see Annot. 5 A.L.R.3d 670, 676-680) appear to be in conflict.

In addition we note that section 631, subdivision (c) of the Penal Code (prohibition of wiretapping) provides: "Except as proof in an action or prosecution for violation of this section, no evidence obtained in violation of this section shall be admissible in any judicial, administrative, legislative or other proceeding." Subdivision (d) of section 632 provides a similarly broad exclusionary rule for evidence obtained by unauthorized eavesdropping or recording of confidential communications.

produce evidence as to wrongful acts of a nature similar to those encompassed" in the complaint (*Morris Stulsaft Foundation, supra,* 245 Cal.App. 2d 409, 422), the evidence would be relevant to "show motive, intent, knowledge, plan and absence of mistake" (see, e.g., *Janisse* v. *Winston Inv. Co.* (1957) 154 Cal.App.2d 580, 588 [317 P.2d 48, 67 A.L.R.2d 225]). They assert, however, that since they have admitted the monitoring of plaintiff's phone, the questions are now irrelevant. As we have already discussed, this argument improperly equates the "relevancy to the subject matter" test with the discarded "relevancy to the issues" standard.

Moreover, these questions as to the frequency of use of the telephone monitoring system may well lead to the discovery of admissible evidence on the issue of the "reasonableness" of the defendant's activity, an issue which remains in dispute. Evidence of a continuous, massive program of unauthorized telephone monitoring may be admissible at trial to rebut defendants' contentions that the company only undertook monitoring after it acquired sufficient information to indicate that the monitoring was necessary to the protection of its property. ▮▮ That the answers to such questions may not prove helpful and may not uncover admissible evidence does not preclude a party from posing them. (See *Morris Stulsaft Foundation* v. *Superior Court, supra,* 245 Cal.App.2d 409, 423.)

▮▮ In addition, evidence of defendants' past practice of widespread monitoring, which may be revealed by the questions challenged here, may quite possibly be admissible at trial on the issue of "malice," an issue expressly in dispute under the present pleadings. Defendants insist that only evidence of prior monitoring of plaintiff should be admissible on the issue of malice at trial; they analogize a present controversy to a defamation action in which only evidence of prior libel or slander against the plaintiff may be admitted. (*Scott* v. *Times-Mirror Co.* (1919) 181 Cal. 345 [184 P. 672, 12 A.L.R. 1007].) Plaintiff responds that this defamation doctrine, one of many technical rules surviving in the defamation field, does not pertain to an intentional invasion of privacy action. Plaintiff instead advocates the applicability of the claimed "general" rule that evidence of other intentional torts upon third persons may be admitted to show malice; he proffers in support those cases applying such a rule in actions for civil assault. (*Kurn* v. *Radencic* (1943) 193 Okla. 126 [141 P.2d 580]; *Jacques* v. *Ellis* (1949 Tex.Civ.App.) 219 S.W.2d 104.)

We do not believe the trial court or this court could appropriately resolve the above issue at this stage of the proceedings: as we have already explained, a decision of the relevancy of the subject matter for purposes of discovery does not constitute a determination of the question of relevancy

at trial.[18] Since the discoverability of information does not depend on its admissibility at trial, doubts as to the appropriateness of a given line of inquiry, in view of the liberal policies underlying the discovery statutes, should generally be resolved in favor of permitting discovery. We certainly cannot say that the conclusion of the trial court that the questions in the fourth category are relevant to the subject matter of the action constitutes an abuse of discretion.

We therefore conclude that the order of the trial court compelling the deponents to answer 97 questions propounded at a deposition does not constitute an abuse of discretion.

The order to show cause is discharged and the petition for writ of prohibition is denied.

McComb, J., Peters, J., Mosk, J., Burke, J., and Fleming, J.,* concurred.

---

[18]It has been suggested that evidence of a general practice of monitoring would not only be insufficient to support a finding that defendants acted with malice toward this plaintiff, but rather would tend to rebut an inference that the defendants' conduct was actuated by personal malice. (Cf. *Lander* v. *Seaver* (1859) 32 Vt. 114.) Even if this is true, however, discovery into the facts of this general practice would still be proper because the general procedure might then be utilized at trial by defendants. Section 2016, subdivision (b), specifically authorizes examination of "any matter . . . which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or *to the claim or defense of any other party.*" (Italics added.)

*Assigned by the Chairman of the Judicial Council.